Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff George Balady*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| | Case No. |
| George Balady, | **COMPLAINT** |
|        Plaintiff, | |
|    v. | |
| Metropolitan Life Insurance Company; Xerox Business Services, LLC. Funded Welfare Benefit Plan; Xerox Business Services, LLC. Unfunded Welfare Benefit Plan; Xerox Business Services, LLC., | |
|        Defendants. | |

Now comes the Plaintiff George Balady (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.      Upon information and belief, Defendant Xerox Business Services, LLC. (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(1), which was self-funded and the short term disability ("STD") benefits are issued through the regular pay cycle, at a percentage of the employee's base salary. Upon information and belief, the name of the entity is the Xerox Business Services, LLC. Funded Welfare Benefit Plan (hereinafter referred to as the "STD Plan") which was created to provide the Company's employees with welfare benefits.

4.      Upon information and belief, the Company and/or STD Plan may have delegated responsibility for the STD Plan's claim administration to Metropolitan Life Insurance Company (hereinafter referred to as "MetLife").  Plaintiff believes that as it relates to his STD claim, MetLife functioned as the Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or STD Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in MetLife.

5.      Upon information and belief, the Company and/or STD Plan may have also operated under a structural conflict of interest in that they may have assumed dual roles as the claims administrator and payor of benefits; *to wit*, if one of the aforementioned entities

-2-

reviewed and approved Plaintiff's short-term disability claim it would then also be liable for the payment of those benefits.[1]

6. The Company and/or STD Plan's conflict of interest may have also led them to retain a company such as MetLife to be the claims administrator in that the Company or STD Plan funded the Plan's benefits and those entities would directly benefit financially if MetLife administered the STD Plan's claims in a parsimonious manner.

7. MetLife's financial conflict of interest existed in that if it maintained a parsimonious approach to managing the STD Plan's claims, it would then benefit by being viewed favorably by the Company or STD Plan who saved money as a result MetLife's claim denials as the Company and STD Plan enjoyed a lower claims experience with fewer required monetary contributions to pay for the STD Plan's benefits.

8. MetLife also operated under a financial conflict of interest in Plaintiff's STD claim because it fully insured the Company's long-term disability (LTD) Policy and MetLife saved money by not having to pay Plaintiff's LTD benefits when it denied his STD claim.

9. MetLife's conflict of interest manifested because the definitions of disability in the STD Plan and the MetLife LTD Policy are similar, if not identical in nature. Logically, given the similar definitions of disability, if MetLife had approved Plaintiff's STD claim, then it would have also had to approve his LTD claim which MetLife fully insured and was financially liable for.

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

10.     Upon information and belief, the Company also sponsored, administered and purchased a group long-term disability insurance policy (hereinafter referred to as the "LTD Policy") which was fully insured by MetLife.  The Company's purpose in sponsoring, administering and purchasing the LTD Policy was to provide long-term disability insurance for its employees.  Upon information and belief, the LTD Policy may have been included in and part of an employee benefit plan, specifically named the Xerox Business Services, LLC. Unfunded Welfare Benefit Plan (hereinafter referred to as the "LTD Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

11.     Upon information and belief, MetLife functioned as the claims administrator of the LTD Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the LTD Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in MetLife.

12.     Upon information and belief, Plaintiff believes MetLife operated under a conflict of interest in evaluating his long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled and the payor of benefits.  MetLife's conflict existed in that if it found Plaintiff was disabled, it was then liable to pay for his LTD benefits.

13.     The Company, MetLife, STD Plan and LTD Plan all conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

14.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

15.     Incident to his employment, Plaintiff was a covered employee pursuant to the STD Plan, the LTD Plan and the relevant LTD Policy and a "participant" as defined in 29 U.S.C. §1002(7).  Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from the STD Plan and LTD Plan and the relevant LTD Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits he may be entitled to from the STD Plan and/or LTD Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

16.     After working for the Company as a loyal employee, Plaintiff became disabled on or about December 15, 2014, due to serious medical conditions and was unable to work in his designated occupation as a Customer Care Representative.  Plaintiff remained continuously disabled as that term is defined in the relevant STD Plan and LTD Policy through November 5, 2015, when he returned to work in another occupation with a different company.

17.     Following the onset of his disability, Plaintiff filed a claim for short-term disability benefits under the relevant STD Plan which was administered by MetLife.  MetLife made every decision in Plaintiff's short-term disability claim, which was to deny it.

18.     Upon information and belief, the relevant STD Plan and definition of disability governing Plaintiff's short-term disability claim is as follows:

"You will be considered disabled if you are unable, due to an illness or injury, to perform all of the material and substantial duties of:
* Your occupation; or

- A similar occupation for which you are reasonably capable due to education or training."

19.     Upon information and belief, the relevant LTD Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

"You are considered disabled if, due to sickness, pregnancy or accidental injury you are receiving care and treatment from a physician on a continuing basis and:

- During the first 24 months, you are unable to earn at least 80% of your pre-disability earnings or indexed pre-disability earnings at your own occupation for any employer in your local economy."

20.     In support of his claim for short-term disability benefits, Plaintiff submitted to MetLife medical evidence which supported his allegation that he met the definition of disability as defined in the relevant STD Plan.

21.     In a letter dated February 20, 2015, MetLife informed Plaintiff it was denying his claim for short-term disability benefits.

22.     Following MetLife's February 20, 2015, denial of his short-term disability claim, Plaintiff filed a claim for long-term disability benefits under the relevant LTD Policy and submitted additional medical and lay witness evidence supporting his allegation that he was disabled and met the definition of disability in the LTD Policy.

23.     In administering Plaintiff's LTD claim, MetLife operated in a conflict of interest as it made the decision with regard to whether Plaintiff was disabled and was liable for the payment of Plaintiff's long-term disability benefits.

24.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed MetLife's February 20, 2015 denial of his short-term disability claim and submitted additional medical and lay witness evidence supporting his appeal and his allegation that he was disabled and met the definition of disability in the STD  Plan.

25.     In support of his short-term and long-term disability claims (hereinafter collectively referred to as Plaintiff's "claims"), Plaintiff submitted to MetLife updated medical records from each of his treating providers and a list of his current medications, as well as the side effects they cause and the impact they have on his ability to work in any occupation and in any work environment.

26.     In addition to the medical records submitted to MetLife, Plaintiff submitted three (3) sworn affidavits from himself and other individuals who know him well and each of them confirmed that Plaintiff was unable to work in any occupation and that his medical conditions had not improved in any meaningful way since his date of disability.

27.     In a letter dated September 17, 2015, MetLife informed Plaintiff it was denying his claim for long-term disability benefits.

28.     As part of its review of Plaintiff's short-term disability claim, MetLife obtained a medical records only "paper review" from one of its own employees, John Del Valle, M.D., who MetLife refers to in its denial letter as its "Senior Medical Director."

29.     Upon information and belief, as a MetLife employee, Dr. Del Valle has an incentive to protect his own employment by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's short-term disability claim, in order to provide opinions and report(s) which are favorable to MetLife and which supported the denial of Plaintiff's short-term disability claim.

30.     Plaintiff questions the independence, impartiality and bias of MetLife's own employee to fully and fairly review his short-term disability claim and alleges Dr. Del Valle's opinions are adversarial to his claim because of his employment relationship with MetLife.  Plaintiff believes MetLife's financial conflict of interest is a motivating factor in why it referred his short-term disability claim to its own employee for review.

31.     In a letter dated January 9, 2016, MetLife again notified Plaintiff it had denied his claim for short-term disability benefits pursuant to the STD Plan.  In the letter, MetLife also notified Plaintiff he had exhausted his administrative levels of review with regard to his short-term disability claim and could file a civil action lawsuit in federal court pursuant to ERISA in that claim.

32.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed MetLife's September 17, 2015 denial of his long-term disability claim and submitted additional medical evidence supporting his appeal and his allegation that he was disabled and met the definition of disability in the LTD Policy.

33.     Plaintiff submitted to MetLife two (2) narrative letters dated March 28, 2016 and April 26, 2016 authored by his board certified physician who concluded, "[Plaintiff] was not able to work due to his medical condition from 12/2014 through 11/2015…his medical condition precludes any full-time employment as outlined in the job description as a customer care specialist for Xerox Business Services."

34.     Plaintiff also submitted to MetLife updated medical records from each of his treating providers.

35.     As part of its review of Plaintiff's claim for long-term disability benefits, MetLife obtained a medical records only "paper review" of his claim from a physician named David Hoenig, M.D.

36.     Upon information and belief, Plaintiff alleges Dr. Hoenig is a long time medical consultant for MetLife and/or the disability insurance industry.  As a result, Plaintiff alleges Dr. Hoenig may have an incentive to protect his own consulting relationships with MetLife and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred

in Plaintiff's long-term disability claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny disability claims.

37.      On June 9, 2016, MetLife provided Plaintiff with a copy of Dr. Hoenig's June 3, 2016 medical records only "paper review" to be forward to Plaintiff's treating physician(s) for a response.

38.      In a letter dated June 23, 2016, Plaintiff's board certified treating physician responded to Dr. Hoenig's report and reiterated his opinion that Plaintiff was unable to work in his prior occupation from December 2014 through November 2015.

39.      In a letter dated July 26, 2016, MetLife notified Plaintiff it had denied his claim for long-term disability benefits pursuant to the LTD Policy.  In the letter, MetLife also notified Plaintiff he had exhausted his administrative levels of review with regard to his long-term disability claim and could file a civil action lawsuit in federal court pursuant to ERISA in that claim.

40.      Upon information and belief, MetLife's January 9, 2016 short-term disability and July 26, 2016 long-term disability denial letters confirm that it failed to provide a full and fair review and in the process committed several ERISA procedural violations.  MetLife violated ERISA for numerous reasons including completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that he met the definition of disability in the STD Plan and LTD Policy during the period of December 15, 2014 through November 5, 2015.

41.     In evaluating Plaintiff's claims on appeal, MetLife owed him a fiduciary duty and it had an obligation pursuant to ERISA to administer them "solely in [his] best interests and other participants" which it failed to do. [2]

42.     MetLife failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of his claims with regard to what evidence was necessary so he could perfect his appeals and claims.

43.     MetLife's failure to investigate the claims and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claims is an ERISA procedural violation, it also violates Ninth Circuit case law and is a reason he did not receive a full and fair review.

44.     Plaintiff alleges MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claims reviewed by a truly independent medical professional; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the STD Plan and LTD Policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and the denials of his claims; by providing biased and one sided reviews of Plaintiff's claims that failed to consider all the evidence submitted by him and/or by de-emphasizing medical evidence which supported Plaintiff's claims; by

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

disregarding Plaintiff's subjective and self-reported complaints/symptoms; by failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have had on his ability to work during the period of December 15, 2014 through November 5, 2015; by failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claims and by failing to consider the impact the side effects that Plaintiff's medications would have had on his ability to engage in any occupation during the period of December 15, 2014 through November 5, 2015.

45.     Plaintiff alleges a reason MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest that manifested in his claims as a result of the roles MetLife undertook as the decision maker in Plaintiff's STD claim, as well as the decision maker and payor of benefits in Plaintiff's long-term disability claim.

46.     MetLife's conflict of interest in both of Plaintiff's disability claims provided it with a financial incentive to deny Plaintiff's claims and when it did, it saved itself money in his LTD claim.

47.     Plaintiff is entitled to discovery regarding MetLife's aforementioned conflicts of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by MetLife to retain a reviewing medical professional in Plaintiff's short-term and/or long-term disability claims and of *any* individual who reviewed his claims.

48.     Plaintiff alleges the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any

ERISA procedural violation which may have impacted or influenced MetLife's decisions to deny his short-term and/or long-term disability claims.

49.    With regard to whether Plaintiff meets the definitions of disability set forth in the STD Plan and/or LTD Policy, the standard of review for the Court to apply is *de novo*, because even though the STD Plan and LTD Policy unlawfully contain discretionary language, they were issued in the state of Texas where Xerox Business Services, LLC. is headquartered and Texas banned discretionary clauses in 2011.

50.    In denying his claims, Plaintiff alleges MetLife failed to provide a full and fair review pursuant to ERISA, and that its denials are *de novo* wrong.  If the Court concludes the STD Plan and LTD Policy properly confer discretion and that the standard of review is for an abuse of discretion, Plaintiff alleges MetLife's unlawful ERISA violations as referenced herein are an abuse of discretion, that they precluded a full and fair review as required by law and are so flagrant they justify *de novo* review.

51.    As a direct result of MetLife's decision to deny Plaintiff's short-term and long-term disability claims, he has been injured and suffered damages in the form of lost short-term and long-term disability benefits, in addition to other potential non-disability employee benefits he may be entitled to receive through or from the STD Plan and/or the LTD Plan, from any other Company Plan and/or the Company as a result of being found disabled.

52.    Plaintiff alleges that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

53.     Pursuant to 29 U.S.C. §1132, in this action Plaintiff seeks and is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

54.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's short-term disability claim is sufficient to prove he met the definition of disability set forth in the STD Plan and that he is entitled to the short-term disability benefits he was not paid, and any other non-disability employee benefits he may be entitled to as a result of that Order, from the date he was first denied these benefits through the date of judgment with prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as he meets the conditions for the termination of benefits;

C.     For an Order finding that the evidence in Plaintiff's long-term disability claim is sufficient to prove that he met the "Own Occupation" definition of disability set forth in the LTD Plan and/or LTD Policy during the period of December 15, 2014 through November 5, 2015 and that he is entitled to those benefits, and any other non-disability employee benefits he may be entitled to as a result of that Order, from the date he was first denied these benefits through the date of judgment with prejudgment interest thereon;

1       D.     For an Order directing Defendants to continue paying Plaintiff the

2  aforementioned benefits until such a time as he meets the conditions for the termination of

3  benefits;

4       E.     For attorney's fees and costs incurred as a result of prosecuting this suit

5  pursuant to 29 U.S.C. §1132(g); and

6       F.     For such other and further relief as the Court deems just and proper.

7                    DATED this 11th day of October, 2016.

8

9                        SCOTT E. DAVIS. P.C.

10                    By:    */s/ Scott E. Davis*

                              Scott E. Davis

11                                Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26